VIRGINIA PUCCI, appellee, v. JAMES B. PUCCI, appellant.

No. 52102.

428

JUNE 14, 1966.

REHEARING DENIED SEPTEMBER 19, 1966.

Wayne C. Collins, of Cedar Rapids, for appellant.

Jack W. Rogers, of Des Moines, for appellee.

LARSON, J.—This is an application in equity by plaintiff to cite defendant for willful failure to make certain child support payments, to increase the monthly support payments, and to require a showing of compliance with the terms of a divorce decree as to life insurance coverage. The trial court made provisional and compliance findings and in a supplemental decree increased the support payments $10 per month for each of the parties' three children. Defendant appeals.

On June 29, 1961, plaintiff Virginia Pucci obtained a divorce from the defendant James B. Pucci. Among other things, she was granted the sole custody and control of the minor children, James, Lynne and Kent, and $60 a month support money for each child until the child attains the age of twenty-one years, is married, or becomes self-supporting. In addition, defendant was ordered to purchase a $30,000 life insurance policy on his own life, with the children as equal irrevocable beneficiaries. Defendant was granted reasonable visitation rights, including the right to have the children with him for a two-week period during their school vacation in the summer and a week at Christmastime, provided he had a home to which he could take them.

On February 27, 1964, plaintiff filed an application to the court, in three divisions, asking (1) that defendant be cited for contempt of court due to his failure to pay some $360 support money as required in the divorce decree, (2) that the defendant be required to increase the support money to plaintiff, for the circumstances had so changed as to her needs and his ability to pay that a modification was proper and right, (3) that, since plaintiff has no way of knowing whether defendant has complied with the insurance requirement in the divorce decree, proof of compliance be furnished at this time.

Defendant's answer denied he was in arrears in child support payments, denied he intentionally withheld payments while the children were in plaintiff's custody, and agreed to make any additional payments the court found he was required to make under the original decree. He denied any uncontemplated increase in his income, that plaintiff's circumstances had changed, or that her reasonably anticipated support needs had increased. He alleged compliance with insurance requirements

of the divorce decree by maintaining Policy No. 4772658 with the Penn Mutual Life Insurance Company.

Along with his answer, defendant filed a counterclaim which requested modification of the divorce decree to increase and make more specific the time or times he could have the "temporary custody" of the children. He also asked approval of a life insurance trust agreement for the handling of life insurance benefits that might accrue to the children in the event of his death.

These applications were heard on March 22, 1965, and on April 14, 1965, the court entered its findings of fact and conclusions of law, which recognized and confirmed a stipulation and agreement between the parties that the amount defendant was in arrears in child support payments was $600, and that the life insurance matters had been satisfactorily adjusted. It found the visitation rights of defendant should not be expanded, but that the times should be designated more specifically, that beginning on the first day of June each year the defendant should be furnished information as to the plans of the children for the summer vacation, and in accordance therewith, the defendant should select the time he desired to exercise his visitation rights, and inform the plaintiff at least two weeks prior thereto. On that date the children should be ready and be delivered into the custody of the defendant. At Christmastime the children should be delivered to defendant as provided in the original decree and at a time designated by defendant beforehand.

On the "chief matter in contest", the trial court found there had been "a material and substantial change of circumstances respecting one or both of the parties to the decree" which would justify a modification of child support provisions of the original decree, and in the supplemental decree entered April 27, 1965, the court ordered that the support payments be increased $10 per month per child, making the total child support payments due plaintiff on the 15th of each month $210.

It further decreed defendant was "in arrears" in the amount of $600 child support, but did not hold him in contempt.

It approved the parties' settlement and stipulation as to

life insurance matters and ordered visitation rights as set out in its findings.

Defendant relies upon three propositions for reversal. First, he contends there is no obligation to pay child support during the time a party has temporary custody unless the decree so provides; second, that defendant's temporary custody rights were not sufficiently enlarged; and third, that admissible evidence at the hearing below does not warrant an increase in support payments.

I. Section 598.14, Code, 1962, provides: "When a divorce is decreed, the court may make such order in relation to the children, property, parties, and the maintenance of the parties as shall be right. Subsequent changes may be made by it in these respects when circumstances render them expedient."

Where the plain provisions of a decree establish rights in the parties, such as the right to payments, those payments which have accrued are vested and may not be taken away. Welch v. Welch, 256 Iowa 1020, 1028, 129 N.W.2d 642; Delbridge v. Sears, 179 Iowa 526, 533, 160 N.W. 218. In the Delbridge case we said: "The right to modify must date from the application for modification; must look to the then condition of the parties; and fix and determine, not what their past rights were, not what their past duties were, but what their rights and duties towards each other, touching alimony, shall be thereafter." Also see Kell v. Kell, 179 Iowa 647, 651, 161 N.W. 634, where we flatly stated "that the court, on application to modify such [original] decree, is without authority to reduce the amounts, or modify the decree with reference thereto retrospectively; * * *."

The original decree here plainly stated that the defendant shall pay to plaintiff as child support for the children "$60 a month for each child, or a total of $180, payable on the 15th day of June, 1961, and the same and similar date of each month thereafter until the further order of this court, * * *." No exceptions or reductions are provided for the visitation periods. Under these conditions it is clear defendant cannot be excused from the payments falling due when the children were with him. Practically, the lodging, clothing, and many other custody

expenses of plaintiff would not be reduced materially while the children were away on such short visits. It must be concluded the claimed credit of $540 by defendant could not be allowed and that he must pay the entire $600 to plaintiff forthwith.

II. Defendant complains of the trial court's failure to extend visitation rights. Based upon his apparently successful third marriage, a new spacious and modern home in Cedar Rapids, and a sincere desire to spend longer periods with his children, he believes the court should have granted greater custodial rights in him.

The trial court has a reasonable discretion in passing upon the advisability or necessity for modification of the custodial or visitation rights of a divorce decree, and this court will not disturb its decision, we have said, unless the record fairly shows it fails to do equity. White v. White, 251 Iowa 440, 443, 101 N.W.2d 18; Jensen v. Jensen, 253 Iowa 1013, 1019, 114 N.W.2d 920. In McKay v. McKay, 253 Iowa 1047, 1052, 115 N.W.2d 151, we pointed out that our previous statements that the findings of the trial court were entitled to much weight were too strong in view of our duty to review the case de novo. Also see Smith v. Smith, 257 Iowa 584, 594, 133 N.W.2d 677, 682.

It appears here the vacation periods in the Chicago schools have been shortened, that when the children attend camp, or visit other relatives, and spend two weeks in the summer with their father, little time is left before school commences in the fall. In any event, there is nothing in this record tending to show the rejection of defendant's understandable request for an extended visitation period failed to do equity, and the trial court's decision must be upheld.

III. We come now to what is referred to as the "chief matter in contest." Appellant contends appellee failed to show by a preponderance of the competent, relevant and material evidence, a change in circumstances such as would justify an increase in the per month per child support allowance provided in the original decree.

We have often said the basic rules governing matters of this kind are that child custody and support provisions of a divorce decree are final as to the circumstances then existing, that such provisions will be modified only where it is proven by

a preponderance of the evidence that subsequent conditions have so changed that the welfare of the children requires, or at least makes expedient, such modification, that in matters of this kind the children's welfare is the controlling consideration, that not every change of circumstances is sufficient basis for modification of a divorce decree, and that a decree will not usually be modified unless its enforcement will be attended by positive wrong or injustice as a result of the changed conditions. Simpkins v. Simpkins, 258 Iowa 87, 90, 137 N.W.2d 621, 623; Welch v. Welch, supra, 256 Iowa 1020, 129 N.W.2d 642, 644, and authorities cited therein.

 We have also pointed out many times that the changed circumstances relied upon must be such as were not within the knowledge or contemplation of the court when the former decree was entered, and that modification should be based upon a change of circumstances more or less permanent or continuous, not temporary. Of course, the change relied upon must be substantial, not trivial. Simpkins v. Simpkins, supra, 258 Iowa 87, 137 N.W.2d 621; Welch v. Welch, supra; Jensen v. Jensen, supra, 253 Iowa 1013, 114 N.W.2d 920; Sandler v. Sandler, 258 Iowa 84, 137 N.W.2d 591; Simpkins v. Simpkins, 256 Iowa 989, 129 N.W.2d 723, and citations; Harwell v. Harwell, 253 Iowa 413, 417, 112 N.W.2d 868, 871.

It appears without dispute that defendant's annual income had risen from $4578.75 per year at the time of the divorce to approximately $7000 per year, and had not varied greatly since the year following the divorce, an increase of about 40 percent. It also appears at the time of the divorce that he had just established a new business and hoped for success and an increase in income, but there is nothing to indicate the court contemplated a substantial increase when it fixed the support payments at that time. There is a contrary inference for, in fixing the amount of support payments, the court added "until the further order of this court." This increase has proven to be substantial, and fairly permanent. Defendant's expense increase during that period, if any, does not appear. However, he and his present wife, an able court reporter, had a 1964 adjusted gross income of $12,468.60 and have an indebtedness of some $35,000, mostly on the new home.

On the other hand, plaintiff had a 1964 income of $3890 from an office job at a nearby Y.M.C.A. She had received a $10 per month increase in pay during the past two years. This income, with the $2160 yearly support from defendant, gave her about $6000 per year to support herself and the three children. She has lived with her father and mother since prior to the divorce, originally paid them some rent, and helped with the food and maintenance costs. Recently, due to her father's illness, she has had to pay most of the house bills and buy the food for all, but she showed it still costs her less than an apartment and a babysitter would cost if she did not live at home. Kent was only five years old at the time of this application.

In addition, it appears that one child, Lynne, age 9, because of poor health and a poor scholastic showing, was placed in an accredited parochial school, and the older boy, James, age 14, due to scholastic proficiency, had been admitted to Lane Technical High School. Both transfers, being unanticipated, had substantially increased plaintiff's school and transportation expenses. It further appears the dental and medical expenses had sharply increased, including two recent tonsillectomy operations costing $250 for the doctor bill alone.

■■ It is true many of these increased expenses could be and no doubt were considered by the trial court when the original decree was entered, but on the other hand this record as to unusual and unanticipated expenses, we think, would support a finding of sufficient change of circumstances to justify a modification of the decree as to support, especially when we also consider the increase in defendant's income. A primary and governing consideration, we have often said, is the best interest of the children (Sandler v. Sandler, supra), and when occurring changes are substantial, and when an increase seems necessary for proper child care and support, and when the increase will not result in a positive wrong, injustice or undue burden on the father, it is proper. Simpkins v. Simpkins, supra, 256 Iowa 989, 129 N.W.2d 723, 725, and citations. The rule is well established that the trial court is vested with a measure of judicial discretion in determining whether the changes in circumstances were reasonably contemplated, and in the absence of an abuse

we will not interfere. Gesmacher v. Gesmacher, 247 Iowa 836, 76 N.W.2d 790; Jensen v. Jensen, supra.

IV. However, it is appellant's contention here that the trial court erroneously considered improper matters in its determination of the question of contemplated change, and thus its findings and conclusions should bear no weight here.

It is true the trial court did take "notice of all matters appearing in its own files", the files pertaining to the original proceedings, although they were not offered or admitted in evidence, and stated "the same was perused" in its determination of "existing circumstances" at the time of the original decree. This was improper and, were this a law action, it would call for a reversal. However, as we have often pointed out, in cases where the trial court erred in considering evidence offered at the previous divorce hearing which was not introduced at the hearing on the present application, or considered other testimony claimed to be incompetent, a reversal is not called for. Our review is on the merits de novo, not for correction of errors at law as in law cases. Rule 334, Rules of Civil Procedure; Simpkins v. Simpkins, supra, 258 Iowa 87, 92, 137 N.W.2d 621, 624, and citations.

Here we have considered only the evidence properly offered at the hearing on the second application. Our duty, then, is to determine whether from that evidence the decree appealed from is right and, if not, to direct the entry of one we believe is right. We are satisfied the supplemental decree as entered is right under the circumstances, and affirm that decree.—Affirmed.

All JUSTICES concur except MOORE, J., who takes no part.