The **FEDERAL LAND BANK OF OMA-HA, n/k/a Farm Credit Bank of Omaha, Plaintiff–Appellant,**

v.

Harold M. **DUNKELBERGER** and Nanette M. **Dunkelberger, Husband and Wife; Perry Production Credit Association, n/k/a Production Credit Association of the Midlands; Reuben Lundberg; and the Estate of Clarence Lundberg, d/b/a Lundberg Farms, Defendants,**

and

Greg Swecker, **Defendant–Appellee.**

No. 91–1618.

Court of Appeals of Iowa.

Feb. 23, 1993.

Thomas H. Burke of Whitfield & Eddy, Des Moines, for plaintiff-appellant.

John C. Werden, Jr. of Van Dyke & Werden, P.C., Carroll, for defendant-appellee.

Considered by OXBERGER, C.J., and HAYDEN and SACKETT, JJ.

HAYDEN, Judge.

This mortgage foreclosure action was commenced in 1985. Litigation involving this action has previously been before this court, federal district court, and bankruptcy court. We will only discuss the facts and proceedings applicable to the issues before us now.

Harold and Nanette Dunkelberger borrowed money from the Federal Land Bank of Omaha, now known as the Farm Credit Bank of Omaha (the Bank). The loan was secured by a mortgage on their farm. The mortgage included rents and profits from the real estate. Dunkelbergers became delinquent in their loan payments, and in 1985 the Bank commenced a mortgage foreclosure action. In March 1987, Dunkelbergers and Greg Swecker entered into a lease agreement. Swecker was to pay $24,825 per year in rent.

The Bank filed an application for the appointment of a receiver in June 1987. Agra–Partners Farm Management, Ltd., now known as Agra Management Ltd. (Agra), was appointed as the receiver. In April 1988 Agra filed a motion seeking to receive the rent money for the 1987 and 1988 crop years.

On September 14, 1988, the district court ordered Dunkelbergers to pay the reasonable rental value of the land, $28,065, for 1987 and 1988. The 1988 payment was made subject to Swecker's liability to pay $24,825 in rent. Swecker paid the receiver $24,825 in November 1988. This money was held in an interest-bearing trust account.

Dunkelbergers had filed a petition for bankruptcy in March 1985. They were eventually discharged from bankruptcy and on February 9, 1989, the bankruptcy court entered an order lifting the automatic stay. The Perry Production Credit Association, now known as the Production Credit Association of the Midlands (PCA), then commenced proceedings to foreclose on the mortgages it held on the Dunkelberger farm. The PCA lien was junior to the Bank's lien. The PCA action was removed to federal district court. Agra was also named as receiver in the PCA action.

The district court entered a judgment and decree of foreclosure on the Bank's mortgage in March 1989. The judgment noted Dunkelbergers had received a discharge of their indebtedness to the Bank in the bankruptcy proceedings. Thus, the Bank was granted judgment *in rem* only against Dunkelbergers. The farm was sold at a sheriff's sale on May 31, 1989. A surplus was received from the sale of certain property (Section 24 property).

Thereafter, the Bank attempted to execute on the earlier judgment for rents. Dunkelbergers objected, claiming the rent judgment had merged with the foreclosure judgment. The district court overruled their motion.

The case was then heard by us on appeal, *Federal Land Bank v. Dunkelberger*, 471 N.W.2d 82 (Iowa App.1990). We there held the order directing Dunkelbergers and Swecker to pay rent created valid judgments in favor of the Bank and not the receiver. We held the judgments for rent merged with the judgment in foreclosure. We ordered the rental judgments to be stricken from the record as independent judgments.

In the meantime, in November 1989 the district court dismissed the receiver from the Section 24 property. The PCA then filed a motion in federal court seeking to include the Section 24 property under its receivership. The court granted the motion on February 21, 1990.

On March 1990, the district court approved the lease between Swecker and the receiver. Swecker's attorney had been holding $9,000 which Swecker had paid as 1989 rent on the property which was temporarily taken out of receivership. The court ordered this money to be transferred to the receiver's account, pending further order of the court.

Swecker filed a motion on February 15, 1991, seeking the return of the $9,000 held by the receiver. On February 19, 1991, Swecker amended his motion to seek the return of the $24,825 rent payment he made to the receiver in November 1988, plus interest. On April 11, 1991, Swecker

filed a motion to discharge the judgment against him for $24,825.

On June 28, 1991, the district court determined the present issue was controlled by our earlier decision. The court concluded the judgments for rent against Swecker, like those against Dunkelbergers, merged in the foreclosure judgment. The Bank had sought the rent in order to pay the foreclosure judgment. The court granted Swecker's motion to discharge the judgment. The Bank was ordered to pay Swecker $33,825, plus interest.

The Bank filed a motion pursuant to Iowa Rule of Civil Procedure 179(b). The court denied the motion, but amended its previous ruling to order the receiver, not the Bank, to pay Swecker $33,825, plus interest. The Bank has appealed.

Mortgage foreclosure proceedings are equitable. *Decorah State Bank v. Zidlicky*, 426 N.W.2d 388, 390 (Iowa 1988). Our review is de novo. Iowa R.App.P. 4.

I. The Bank contends our prior decision is not applicable to Swecker. Swecker was not a party to the appeal. The Bank believes Swecker waived his right to the 1988 rent payment by not joining in Dunkelbergers' appeal and not objecting previously. The Bank also raises an argument on the merits and claims its right to the rents and profits from the land is separate from the foreclosure action.

Generally, a party who has not appealed is not entitled to a ruling more favorable than it obtained in the trial court. *See Ottumwa Boiler Works v. M.J. O'Meara & Son*, 208 Iowa 80, 87, 224 N.W. 803, 806 (1929).

However, we conclude the doctrine of issue preclusion may be applied against the Bank in this case. Issue preclusion, also known as collateral estoppel, serves the dual role of protecting litigants from the burden of relitigating an identical issue with the same party or his privy and of promoting judicial economy by preventing needless litigation. *Harris v. Jones*, 471 N.W.2d 818, 819 (Iowa 1991). In general, issue preclusion should be applied only when the party against whom preclu-

sion is asserted had a full and fair opportunity to litigate. *Id.* at 820.

Issue preclusion may be determinative only where four requirements are established: (1) the issue concluded must be identical; (2) the issue must have been raised and litigated in the prior action; (3) the issue must have been material and relevant to the disposition of the prior action; and (4) the determination of the issue in the prior action must have been necessary and essential to the resulting judgment. *In re Evans*, 267 N.W.2d 48, 51 (Iowa 1978). Identity of parties is no longer always necessary to give validity to a claim of issue preclusion. *Id.*

We find all four factors have been met in this case. The issue concerning the validity of the rent judgments was fully litigated by the Bank in the previous appeal. We conclude the Bank is bound by our decision the rent judgments "should be stricken from the record as independent judgments." *See Dunkelberger*, 471 N.W.2d 82. Our decision did not distinguish between the judgments against Dunkelbergers and Swecker. We determine the Bank may not now relitigate this issue as to Swecker.

We affirm the decision of the district court on this issue.

II. The Bank contends Swecker is not entitled to the $9,000 held by the receiver because the receivership in the PCA's suit should relate back to July 13, 1989, the date the PCA filed a motion to add the Section 24 property to the receivership. The Bank's claim is based on its argument the PCA meant to include all of Dunkelbergers' real estate in the receivership, and the federal court order expanding the property under the receivership was a nunc pro tunc order clarifying the extent of the receivership.

A nunc pro tunc order can be used only to correct obvious errors or to make an order conform to the judge's original intent. *Graber v. Iowa District Court*, 410 N.W.2d 224, 229 (Iowa 1987). Such an order is not for the purpose of correcting

judicial thinking, a judicial conclusion, or mistake of law. *Id.* A nunc pro tunc order is proper to correct an obvious mistake or to make the record conform to an adjudication actually or inferentially made but which by oversight or evident mistake was omitted from the record. *Jersild v. Sarcone,* 163 N.W.2d 78, 81 (Iowa 1968).

Assuming the Bank may raise claims which should more properly have been raised by the PCA, we conclude the federal court's order here is not a nunc pro tunc order. Nothing in the decision shows it was intended to merely correct an obvious oversight or mistake. We find there was no relation-back of the PCA's receivership over the Section 24 property prior to the federal court's ruling on February 21, 1990.

A receiver appointed prior to a sheriff's sale will be discharged if the full amount of the judgment of foreclosure is received at the sale. *Federal Land Bank v. Heeren,* 398 N.W.2d 839, 841 (Iowa 1987). Even after a receiver was appointed, he ordinarily would not be entitled to collect rents after the judgment is satisfied. *Id.* at 844.

We determine Swecker is entitled to the return of the $9,000 rent payment.

We affirm the district court on all issues. Costs of this appeal are assessed to the Farm Credit Bank of Omaha.

**AFFIRMED.**